UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RONALD FOSTER, | ) | CASE NO. 1:08 CV 2810 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JUDGE A. DEAN BUCHANAN, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On December 1, 2008, pro se plaintiff Ronald Foster filed this action under 42 U.S.C. §§ 1983, 1985, and 1988 against Cleveland Heights Municipal Court Judge A. Dean Buchanan, Cleveland Heights Municipal Court Clerk of Court Sandra Barry, the City of Cleveland Heights, Cleveland Heights Law Director John H. Gibbon, the City of Cleveland, Cleveland Municipal Court Clerk of Court Earl B. Turner, Ohio Supreme Court Justice Thomas J. Moyer, and Ohio Eighth District Court of Appeals Judge Patricia Blackmon. In the complaint, plaintiff alleges he was denied due process and equal protection. He seeks $ 18,000,000.00 in compensatory damages, $ 18,000,000.00 in punitive damages, declaratory and injunctive relief.

**Background**

Mr. Foster's mother rented a second floor apartment on East 123rd Street in Cleveland, Ohio in the early 1970's. There was no verbal agreement, only a month to month

arrangement.  Mr. Foster lived there with her for several years until she died in 1978.  Thereafter, he resided in the apartment under a similar arrangement.  Rent in the amount of $275.00 per month was paid.

In February 1999 and April 2002, Mr. Foster provided notices to his landlord, Marcellus Hodge, of repairs that were needed to make the apartment habitable.  The repairs were not made within a reasonable period of time, and Mr. Foster began depositing his rent payments with the Cleveland Municipal Court Clerk of Court.

Mr. Foster filed a case, No. 02CVG16189, in the Cleveland Municipal Court on December 19, 2002.  He sought to recover part of his rent from his landlord for the diminution in value of the property as a result of the conditions of the apartment.  The Court found that Mr. Foster's actions prevented the landlord from entering the property to make repairs from June 2002 until September 2002.  Work began in October 2002 and was completed in January 2003.  The Court determined that the diminished value to his property was $ 50.00 per month, for a total award of $ 2,022.00, plus interest from the date of judgement and costs.

Thereafter, the parties filed multiple actions against each other.  Mr. Hodge filed an action against Mr. Foster in 2003 seeking release of the rent being held in escrow, Case No. 03CVG08678.  He also filed an eviction action against Mr. Foster, Case No. 03CVG32030, and two additional actions for release of rents, Case Nos. 04CVG18275, and 08CVG11437.  Mr. Foster attempted to collect on the judgment he had received and garnished Mr. Hodge's wages.  The garnishment was paid into Key Bank.  Mr. Foster filed a Motion asking the Court to recuse itself in the eviction action.  The Motion was denied.  Mr. Foster responded by filing a counterclaim in the eviction action asserting that Mr. Hodge retaliated against him for depositing his rent with the

court and seeking $ 325,000 in damages. He pointed out that amount he was seeking in damages exceeded the jurisdictional limits of the Cleveland Municipal Court, and as a result required the Judge to transfer the matter to the Common Pleas Court. The court neither accepted or denied the counter claim, but stayed the matter. In January 2004, Judge Raymond L. Pianka recused himself from the cases and asked Ohio Supreme Court Justice Thomas Moyer to reassign them. Justice Moyer then transferred them to the Cleveland Heights Municipal Court and assigned them to Judge A Dean Buchanan.

Mr. Foster filed a mandamus action against Judge Buchanan in the Ohio Eighth District Court of Appeals. He asked the Court to compel Judge Buchanan to recuse himself based on the jurisdictional amount, to transfer the cases to the Court of Common Pleas, to compel payment of monies owed to him from the previous judgment, and to compel discovery. The Eighth District Court of Appeals held that Judge Buchanan was not required to automatically transfer the case to Common Pleas Court based solely on the amount in controversy, but could examine the merits of the claim to determine whether the amount really exceeded the jurisdictional limits. Mandamus was denied.

On August 24, 2008, Judge Buchanan issued an opinion which addressed the pending cases. He stated that the amount of rent deposited with the Clerk of Court was $ 20,075.00. He noted that Mr. Foster was entitled to $ 200.00 ($ 50.00 per month) for the diminished value of the property from October 2002 to January 2003 while repairs were being made to the apartment. The Court also noted that Mr. Foster had received a judgment in the amount of $ 2,022.00 plus interest and costs for the diminished value of the property from February 1999 to May 2002. Mr. Foster garnished Mr. Hodge's wages which were paid into Key Bank. The total held by the bank

was $ 2,312.00. That sum included interest which accumulated through November 2003. The sum of $ 948.00 was due and owing to Mr. Foster for interest on his judgment from November 2003 to August 2008. These amounts were to be paid to Mr. Foster from the deposited rent. The remaining balance, $ 18,926.34 was to be released to Mr. Hodge.

Mr. Foster has now filed the within action to attack that judgment. In Count I of his complaint, he asserts claims under 42 U.S.C. § 1983 for denial of due process and equal protection. He contends in Count II that the defendants committed fraud, engaged in a fraudulent conspiracy, suborned perjury, and tampered with judicial proceedings. In Count III, he contends that he was denied due process in the rent release proceeding, that the defendants acted with deliberate indifference to his rights, that the judges conspired against him to deny him access to the courts because he is black, that they conspired to "seize his judgment award/counterclaim" thereby denying him due process, and failed to train or supervise their employees in carrying out the policies of their departments. In Count IV, he claims that the City of Cleveland, the Cleveland Municipal Court Clerk of Court, Justice Moyer, the Law Director, the Cleveland Heights Municipal Court Clerk of Court, and Judge Blackmon, failed to intervene on his behalf to protect his interest. Count V contains claims for violation of 42 U.S.C. § 1986. Count VI contains claims for violation of §1985. In Count VII, he reiterates that the City of Cleveland and the City of Cleveland Heights failed to train their employees. Count VIII is asserted against the Cleveland Heights Law Director for failing to supervise City employees. Finally, Count IX contains claims arising under Ohio law.

**Analysis**

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss

an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

As an initial matter, United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); see, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult

to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Coles v. Granville, 448 F.3d 853, 857-59 (6th Cir. 2006). Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

In the present action, plaintiff's claims all directly attack the state court's decisions. All of the allegations in these causes of action concern specific grievances that the law was incorrectly applied to plaintiff's case, and are clearly predicated on his belief that the state courts were mistaken in rendering their decisions against him. Moreover, plaintiff requests that the state court be enjoined from doing anything in furtherance of its judgment. Any review of the constitutional claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against him. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

Even if this court had jurisdiction to consider this matter, it could not proceed against the named defendants. Judge Buchanan, Judge Blackmon and Justice Moyer are absolutely immune from suits for damages. Judicial officers are generally absolutely immune from civil suits for money damages. Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). This far-reaching protection is needed to ensure that the independent and impartial

-6-

exercise of judgment is not impaired by the exposure of potential damages. Barnes, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed in the judge's judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction. Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. Plaintiff alleges no facts to show that either of these criteria has been met in this case.

The determination of whether an action is performed in the defendants' judicial capacity, depends on the "nature" and "function" of the act, not on the act itself. Mireles, 502 U.S. at 13; Stump v. Sparkman, 435 U.S. 349, 362 (1978). Looking first to the "nature" of the act, the court must determine whether it is a function generally performed by a judge. Stump, 435 U.S. at 362. This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges. Mireles, 502 U.S. at 13. Second, an examination of the "function" of the act alleged requires the court to assess whether the parties dealt with the judge in his or her judicial capacity.

Upon applying these principles, it is evident on the face of the pleading that Judge Buchanan, Judge Blackmon and Justice Moyer were acting in their judicial capacities at all times that the conduct alleged in plaintiff's complaint occurred. The orders issued by these judges pertained to matters before the court and he dealt with these judges only in their respective judicial capacities. Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction. Mireles, 502 U.S. at 11-12; Barnes, 105

F.3d at 1116. (emphasis added.) When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed. Stump, 435 U.S. at 356-57. A judge will be not deprived of immunity because the action he or she took was performed in error, done maliciously, or was in excess of his or her authority. Id. Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides. King v. Love, 766 F.2d 962, 965 (6th Cir. 1985); see Barnes, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity. See Sevier v. Turner, 742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the complaint which reasonably suggest that any of the defendants clearly acted outside of the subject matter jurisdiction of their courts. The Municipal Court has subject matter jurisdiction to hear landlord/ tenant matters. The Court of Appeals and the Ohio Supreme Court have jurisdiction to hear appeals and recusals. While Mr. Foster argues that they may have exceeded their authority under Ohio law, they were acting within the parameters of the subject matter jurisdiction of their respective courts. Judge Buchanan, Judge Blackmon and Justice Moyer are therefore entitled to absolute immunity from monetary damages in this matter.

Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process. Foster v. Walsh, 864 F.2d 416, 417 (6th Cir. 1988). Whether an act is judicial in character does not depend on whether it is discretionary. Id. Rather, immunity applies to all acts of auxiliary court personnel that are "basic and integral parts of the judicial function," unless those acts are done in the clear absence of all subject matter jurisdiction of the court. Mullis v. U.S. Bankruptcy Court, Dist of Nevada, 828

F.2d 1385, 1390 (9th Cir. 1987). Acts committed in error or in excess of jurisdiction will not abrogate immunity, even if it results in "grave procedural errors." Id. The acts of the court clerks about which plaintiff complains - collecting and holding funds, and refusing to accept documents for filing- are all integral parts of the judicial process and within the subject matter jurisdiction of their Municipal courts. Sindram v. Suda, 986 F.2d 1459, 1461 (D.C. Cir. 1993)(citing the Sixth Circuit's decision in Foster).[1] Sandra Barry and Earl B. Turner are therefore entitled to absolute immunity.

Finally, Mr. Foster asserts various claims of supervisory liability. As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." Id. at 690; DePiero v. City of Macedonia, 180 F.3d 770, 786 (6th Cir. 1999). Although

---

[1] See Fish v. Murphy, No. 01-3601, 2001WL 1355611(6th Cir. Oct. 26, 2001)(finding the clerk of court was entitled to absolute immunity even though he stamped the wrong date on the document which resulted in the dismissal of an appeal); Harris v. Suter, No. 00-3309, 2001 WL 111586 (6th Cir. Feb. 1, 2001)(holding clerk was entitled to absolute immunity for actions associated with filing or failing to file a document); Burton v. Mortimer, No. 99-1956, 2000 WL 876517 (6th Cir. June 22, 2000)(finding the denial of free copies of the file and a delay in forwarding the record to the state court of appeals which results in an erroneous dismissal for lack of jurisdiction and are both quasi-judicial functions which entitle the clerk to absolute immunity); see also Foster, 864 F.2d at 417 (the act of issuing an order of a judge is a quasi-judicial function entitled to immunity).

Mr. Foster states in conclusory terms that the defendants acted pursuant to some custom or policy, he does not allege or identify any official position of the City of Cleveland or the City of Cleveland Heights which motivated Judge Buchanan to make his decision. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

Moreover, his claims for failure to train and failure to supervise employees must also be dismissed. Respondeat superior is not a proper basis for liability of an employer or supervisor under § 1983. Leary v. Daeschner, 349 F.3d 888, 903 (6th Cir.2003); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984). Liability of supervisors must be based on something more than the mere right to control employees, Bellamy, 729 F.2d at 421, or "simple awareness of employees' misconduct," Leary, 349 F.3d at 903; Bellamy, 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999) (quoting Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Id. (quoting Hays, 668 F.2d at 874). Failing to attempt to influence a sitting judge on a matter before him is not a basis for liability.

Finally, Mr. Foster's claims for violations of the Ohio Constitution are dismissed without prejudice. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy

-10-

dictate having a single trial. United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966). The court, however, may exercise discretion in hearing state law matters. Id. at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. Id. Having dismissed plaintiff's federal law claims, this court declines jurisdiction to hear plaintiff's state law claims.

## Conclusion

Accordingly, this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

December 17, 2008

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.